UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DANIEL A. BROWN, | ) |
| Plaintiff, | ) ) |
| | ) 1:21-cv-00101-JAW |
| v. | ) ) |
| NBM RAIL SERVICES, INC., | ) ) |
| Defendant. | ) ) |

**ORDER AFFIRMING IN PART AND REJECTING IN PART THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

A defendant railroad objects to the Magistrate Judge's recommendation that the Court deny summary judgment on a plaintiff railroad worker's claim that the railroad violated 45 U.S.C. § 51 by acting negligently when it failed to provide him with a hydraulic machine to remove screw spikes. Because a railroad company is not liable under 45 U.S.C. § 51 for failing to provide the best or safest tool to its workers so long as it provides a reasonably safe tool, the Court rejects the Magistrate Judge's recommended decision as to the railroad worker's theory that the railroad acted negligently when it provided him with a claw bar to remove screw spikes but failed to provide him with a hydraulic machine. The Court otherwise affirms the Magistrate Judge's recommended decision to grant summary judgment to the railroad as to the railroad worker's other two legal theories and thereby grants summary judgment on the railroad worker's 45 U.S.C. § 51 claim.

I.  **PROCEDURAL HISTORY**

On April 8, 2021, Daniel Brown filed a complaint under Title 45 U.S.C. § 51, et seq., the Federal Liability Act (FELA), and Title 49 U.S.C. § 20701, et seq., the Federal Locomotive Inspection Act (FLIA).  *Compl.* (ECF No. 1).[1]  On April 7, 2022, NBM Rail Services (NBM Rail) filed a joint statement of stipulated facts.  *Joint Statement of Stipulated Facts Deemed Admitted Solely for Purpose of Summ. J.* (ECF No. 35) (JSSF).  On April 12, 2022, NBM Rail filed a motion for summary judgment on all claims, *Mot. for Summ. J.* (ECF No. 38) (*Mot. for Summ J.*), and its statement of material facts.  *Def.'s Statement of Material Facts* (ECF No. 39) (DSMF).  On May 4, 2022, Mr. Brown filed his response to NBM Rail's motion for summary judgment, *Response to Mot. for Summ. J.* (ECF No. 41) (*Pl.'s Opp'n*), and his opposition to NBM Rail's statement of material facts.  *Pl.'s Opp'n to Def.'s Statement of Material Facts and Additional Statement of Material Facts* (ECF No. 42) (PSAMF).  On May 24, 2022, NBM Rail filed a reply in support of its motion for summary judgment.  *Reply in Supp. of Mot. for Summ J.* (ECF No. 45).

The United States Magistrate Judge filed with the Court on October 13, 2022 his Recommended Decision, recommending that the Court grant NBM Rail's motion as to the Plaintiff's allegation that the mere use of a claw bar constitutes negligence, that the Court deny the Plaintiff's motion to amend the complaint to assert a failure to train claim or, alternatively, grant its motion for summary judgment on that issue, and deny its motion as to Plaintiff's claim that the

---

[1]   During the litigation, Mr. Brown dropped his FLIA claim and chose to pursue only his FELA claim.  *Recommended Decision* at 17 n.6; *Mot. for Summ J.* at 16.

Defendant was negligent for directing him to use a claw bar and not a hydraulic machine to remove screw spikes. *Recommended Decision on Mot. for Summ. J.* (ECF No. 49) (*Recommended Decision*). NBM Rail filed its objection to the Recommended Decision on October 27, 2022. *Obj. to Report and Recommended Decision* (ECF No. 50) (*Def.'s Obj.*). Mr. Brown filed his response to NBM Rail's objection on November 10, 2022. *Resp. to Obj. to Report and Recommended Decision* (ECF No. 51) (*Pl.'s Resp.*).

## II.   FACTS

### A.   Background

Mr. Brown is a resident of Orneville Township, in Piscataquis County, Maine. *Compl.* ¶ 1. He worked for Eastern Maine Railway from June 2017 until December 2017. PSAMF ¶ 1. NBM Rail hired Mr. Brown on April 10, 2018, as a temporary track laborer. JSSF ¶ 2.

### B.   Railway Fasteners

A railway consists of steel running rails installed on crossties embedded in the ground and surrounded by stones known as ballast. DSMF ¶ 1. Tie plates are located between the crossties and the running rails, forming a part of the system used to fasten the track components together and to disperse the load of the passing trains. DSMF ¶ 2. The safety and efficacy of a railway demands the use of an appropriate system to fasten the running rails, tie plates, and crossties in place and to one another; in the absence of an appropriate fastening system, the forces applied by a train could move the rails out of position, creating a risk of derailment. DSMF

¶ 3.  There exists a variety of means to fasten a running rail to a crosstie.  DSMF ¶ 4.

One of the most prevalent means to fasten a running rail to a crosstie involves the use of cut spikes, which are angled, unthreaded spikes.  DSMF ¶ 5.[2]  The cut spike is driven through a square hole in the tie plate into the crosstie, with the angled head of the cut spike pressing down on the running rail, thereby securing the running rail in place, with additional cut spikes installed as necessary to secure the tie plates to the crossties.  DSMF ¶ 6.  Another prevalent fastening system involves the use of an "elastic fastener," which functions as a clip attached to the tie plate to hold down the running rail.  DSMF ¶ 7.  In such a system, a screw spike is used to bolt the tie plate to the crosstie.  DSMF ¶ 8.  Unlike cut spikes, screw spikes do not contact the running rail.  DSMF ¶ 9.  Screw spikes are threaded and have flat washer heads.  DSMF ¶ 10.

A railway turnout is the place where a train may be diverted from one track to another.  DSMF ¶ 12.  A railway switch is the mechanism that diverts a train from one track to another.  DSMF ¶ 11.  Cut spikes and screw spikes may be used in combination to fasten different components in a railway switch area.  DSMF ¶ 11.

### C.  Claw Bar Tool

Running rails, tie plates, crossties, and the attendant fastening systems require periodic maintenance and at times, replacement.  DSMF ¶ 14.  In a project that requires the removal of running rails or crossties, track maintenance personnel

---

[2]  To view each fastening method, *see* DSMF ¶¶ 5-10.

4

must remove the fasteners used to secure the running rails and tie plates to the crossties, regardless of whether the fasteners are screw or cut spikes. DSMF ¶ 15. The tool used to remove the fasteners depends on the circumstances, including the condition of the running rail, tie plate, or fastener and the location of the fastener relative to other equipment. DSMF ¶ 16.

A claw bar is a specialized tool used in the railway industry to remove fasteners. DSMF ¶ 18. A claw bar is an approximately five-foot long metal bar, with one end designed to slide underneath the head of a fastener. DSMF ¶ 20. The user applies force to the other end of a claw bar to lift the head of the fastener. DSMF ¶ 21. The user can adjust the amount of force conveyed, backing off or ceasing to apply force entirely if the claw bar does not prove effective at removing the fastener. DSMF ¶ 23. Unlike larger powered tools, such as a hydraulic spike puller or on-track maintenance machine, a claw bar conveys force based only on the manual force generated by the user. DSMF ¶¶ 22-23. A claw bar is particularly useful for removing fasteners in switch areas, where many of the track components could be together in a tight space, making it difficult to use powered tools. DSMF ¶ 23.

A track maintenance worker can attempt to remove both cut spikes and screw spikes with a claw bar provided the claw bar user can fit the end of the claw bar underneath the head of the fastener. DSMF ¶ 25. If the fastener is too deeply embedded in the crosstie or is otherwise stuck, the user can cease using the claw bar. DSMF ¶ 28.

### D.     Daniel Brown's Experience and Injury

Mr. Brown worked most of his life as a truck driver. PSAMF, Attach 2, *Plaintiff's Declaration* ¶ 2. When he was employed by Eastern Maine Railway and Defendant, Mr. Brown spent virtually all his time driving trucks or operating heavy equipment. *Id.* ¶¶ 5, 10; JSSF ¶ 3. Mr. Brown was never trained in the use of a claw bar by Eastern Maine Railway or NBM Rail, and he had never used a claw bar before the date of his injury. PSAMF ¶¶ 2–5.

NBM Rail assigned Mr. Brown's crew to work on a segment of rail track near Attleboro, Massachusetts. JSSF ¶ 4. The Attleboro project required Mr. Brown's crew to remove a defunct rail switch and replace it with straight track. JSSF ¶ 5. On April 17, 2018, Mr. Brown performed his usual duties driving trucks and operating a loader, but eventually he completed the work. *Plaintiff's Declaration* ¶ 11. The foreman asked Mr. Brown to assist the crew by removing screw spikes holding a switch in place. *Id.* ¶¶ 12–13. According to Mr. Brown, the foreman told him that the screws were normally removed with a hydraulic machine, but the machine was broken. *Id.* ¶ 14. Mr. Brown asserts the foreman asked him to use a claw bar because there was insufficient time to wait for another hydraulic machine. *Id.* ¶ 15–16; JSSF ¶ 8. The claw bar he used was free from any defects. JSSF ¶ 9. Prior to his injury, Mr. Brown never complained about or objected to having to use a claw bar to remove screw spikes. JSSF ¶ 14.

The first two screw spikes Mr. Brown removed were in rotted wood, and he removed the two screw spikes without incident. JSSF ¶ 11. Mr. Brown then

attempted to remove a third screw spike.  JSSF ¶ 11.  He was able to fit the end of the claw bar underneath the head of the third screw spike, and he applied force to loosen and remove it.  JSSF ¶ 12.  As he pulled on the claw bar, he injured his left wrist.  JSSF ¶ 13.  Mr. Brown felt popping in his wrist and the immediate onset of pain. *Complaint* ¶ 13.  He experienced swelling and pain for a prolonged period and later had surgery on the wrist.  *Supplemental Pl.'s Mem. of Law in Opp'n to Def. Mot. for Summ. J.* at 3 (ECF No. 40-1).

### III. MR. BROWN'S CLAIM AND THE RECOMMENDED DECISION

Mr. Brown asserts three legal theories for his claim that NBM Rail violated FELA by providing him with only a claw bar to remove railroad screw spikes.  He asserts (1) that the mere use of the claw bar was unsafe to the point of negligence (the "unsafe tool" theory), *Pl.'s Opp'n* at 10; (2) that the railroad company negligently failed to train him on the proper use of the claw bar (the "failure to train" theory), *id.*; and (3) that the railroad company acted negligently when it failed to provide him with a hydraulic machine to remove screw spikes (the "better tool" theory).  *Id.* at 8.

On October 13, 2022, the Magistrate Judge issued a recommended decision in which he recommended that the Court grant summary judgment on Mr. Brown's first two legal theories—the unsafe tool and the failure to train theories—and deny summary judgment on Mr. Brown's third legal theory—the better tool theory.  Neither party filed an objection to the Recommended Decision regarding the Magistrate Judge's recommendation that the Court grant summary judgment on

Mr. Brown's unsafe tool and failure to train theories.  The Court reviewed and considered the Magistrate Judge's recommendation, together with the entire record, and the Court made a de novo determination of all matters adjudicated by the Magistrate Judge and affirms the Magistrate Judge's Recommended Decision as to the unsafe tool and failure to train theories.  The Court therefore addresses only Mr. Brown's better tool theory.

The Magistrate Judge, after finding summary judgment appropriate as to Mr. Brown's first two legal theories, explained that the issue under the third legal theory is "whether, under the circumstances in this case, a factfinder could reasonably conclude that Defendant was negligent when it did not provide Plaintiff with a hydraulic machine and directed him to use a claw bar." *Recommended Decision* at 9.  The Magistrate Judge added that "[t]he summary judgment record, when viewed most favorably to Plaintiff, reveals that the screws were normally removed using a hydraulic machine but the machine was broken, and that Defendant directed Plaintiff to use the claw bar because they were under time pressures and could not wait for another hydraulic machine." *Id.* (internal citations omitted).  He concluded that "[t]he record thus would support a finding that Defendant did not follow its ordinary practice . . . [and a] factfinder could reasonably infer that without the 'time pressures,' Defendant would have maintained its ordinary practice." *Id.* at 9-10.  He explicated that "[w]hether under the circumstances Defendant acted reasonably in not securing a hydraulic machine and in directing Plaintiff to use the claw bar is a factual issue that precludes

8

summary judgment in favor of Defendant" because "Defendant's normal practice, the nature and reasonableness of the 'time pressures,' the location of another hydraulic machine, and the time necessary to obtain another machine, are among the factors for a factfinder to address." *Id.* at 10.

## IV. NBM RAIL'S OBJECTION

NBM Rail asserts that the Magistrate Judge erred in recommending that the Court deny summary judgment on Mr. Brown's better tool theory because "[a]s a matter of law, the mere availability of a more sophisticated tool cannot transform the tool used from 'safe' to 'unsafe.'" *Def.'s Obj.* at 4. NBM Rail submits that "[u]nder FELA, a railroad is not required to 'eliminat[e] all dangers;' rather, it must only eliminate 'those dangers which could be removed by reasonable care on the part of the employer . . . in light of the normal requirements of the job.'" *Id.* at 5 (quoting *Conway v. Consol. Rail Corp.*, 720 F.2d 221, 223 (1st Cir. 1983) (internal citations omitted)). NBM Rail further asserts that "a railroad must provide tools and equipment only 'that are reasonably safe and suitable' for the required job." *Id.* (quoting *Soto v. S. Pac. Transp. Co.*, 514 F. Supp. 1, 4 (W.D. Tex. 1979), *aff'd*, 644 F.2d 1147 (5th Cir. 1981)).

NBM Rail argues that "the mere availability of a hydraulic spike puller does not render the claw bar Plaintiff used unsafe," *id.*, and "FELA does not require a railroad 'to furnish [its] employee with the latest, best or most perfect appliance with which to work, nor to discard standard appliances already in use that are reasonably safe and suitable, even though later improvements have been

9

discovered.'" *Id.* at 5-6 (quoting *Soto*, 514 F. Supp. at 4 and collecting cases).

NBM Rail then submits that "[w]hen faced with a nearly identical fact pattern, the District of Colorado . . . preclude[ed] recovery on a similar 'better tool' theory [i]n *Miller v. BNSF Ry. Co.* [when] a truck driver employed by a railroad suffered an injury after he was asked to use a claw bar to remove railroad spikes." *Id.* at 7 (citing *Miller*, No. 15-CV-2268-WJM-NYW, 2017 U.S. Dist. LEXIS 70652, at *2 (D. Colo. May 9, 2017)). NBM Rail explains how the district court rejected the plaintiff's theory that "the railroad breached its duty under FELA to provide him with a reasonably safe tool" and "found that there was no genuine dispute that a claw bar is a reasonably safe tool." *Id.* (citing *Miller*, 2017 U.S. Dist. LEXIS 70652, at *11-12). NBM Rail further explains how "[t]he court determined that '[s]ince, as a matter of law, Defendant *did* provide a reasonably safe tool, namely, the claw bar, then also as a matter of law, Defendant had no further duty to provide a safer or more perfect tool.'" *Id.* at 7-8 (*Miller*, 2017 U.S. Dist. LEXIS 70652, at *11) (emphasis in *Miller*). NBM Rail contends that the Magistrate Judge's conclusion that "Plaintiff has provided no evidence that would allow a factfinder to conclude that a claw bar is . . . not a reasonably safe tool for employees to use in the removal of fasteners" should have "ended the [c]ourt's inquiry into the 'better tool' theory and sufficed to grant summary judgment to NBM Rail." *Id.* at 8.

Finally, NBM Rail argues that "the Recommended Decision on the better tool theory is contrary to common law principles of negligence and is unsound as a matter of policy." *Id.* at 9. NBM Rail submits that "[u]nder established common

10

law principles, an employer is 'not required to provide for the use of his employ[ee]s the latest or safest appliances, even if in the opinion of competent mechanical experts such appliances would have been more suitable or less dangerous.'" *Id.* at 9-10 (quoting *Wilson v. Alexander*, 230 Mass. 242, 244, 119 N.E. 754 (1918) and collecting cases). NBM Rail further submits that "[i]f adopted, the Recommended Decision on the better tool theory would create a new standard of liability under FELA," and "[u]nder this new standard, a railroad that typically uses a more sophisticated tool, but which is required by circumstance to temporarily use a less sophisticated (but still reasonably safe) alternative, may be liable for its employee's injury," whereas "a railroad that chooses never to adopt the more sophisticated tool could not be liable where the ordinary tool gave rise to the same injury." *Id.* at 11. NBM Rail asserts that "[t]his standard not only runs counter to the law, but is unsound as a matter of policy." *Id.*[3]

## V. DANIEL BROWN'S RESPONSE

Mr. Brown contends that "[i]t is important to keep in mind that FELA is to be construed liberally to permit the purposes of the act to be fulfilled" and that "[b]ecause the underlying purpose of FELA is to protect injured railroad workers, courts have frequently warned against removing cases from the jury except in rare circumstances." *Pl.'s Resp.* at 4 (citing *Rogers v. Missouri P.R. Co.*, 352 U.S. 500,

---

[3] NBM Rail additionally argues that even if the Court determines that a railroad can be found negligent for failing to provide a hydraulic machine as in its ordinary practice, the Court should nonetheless grant summary judgment on Mr. Brown's better tool theory because "Plaintiff has presented no evidence that a hydraulic machine is actually safer than a claw bar" and therefore "cannot overcome summary judgment." *Def.'s Obj.* at 11-12. The Court need not address this argument here because the Court finds summary judgment appropriate as to Mr. Brown's better tool theory regardless of whether the hydraulic machine is a safer tool than the claw bar.

11

509 (1957)). Mr. Brown further contends that "in FELA cases, negligence is not to be given a technically restricted or traditional meaning," explaining that "[i]n the First Circuit FELA [has] also been given liberal construction." *Id.* (citing *Robert v. Consol. Rail Corp.*, 832 F.2d 3, 6 (1st Cir. 1987)). He argues that "[u]nder FELA NBM [Rail] owed a duty to provide Mr. Brown with a reasonably safe work environment . . . [and it] breached that duty by negligently failing to provide Mr. Brown with adequate training on the use of a dangerous piece of equipment." *Id.* at 5. Mr. Brown concludes that "[g]iven the low standard that applies to FELA claims, there are genuine issues of material fact in dispute" and the Magistrate Judge "appropriately denied the Defendant's Motion for Summary Judgment as to the Plaintiff's claim that the Defendant was negligent in directing him to use a claw bar rather than providing a hydraulic machine to pull the screw spike." *Id.* at 7.

## VI. LEGAL STANDARD

### A. De Novo Review

The Court reviews any recommended decision by a magistrate judge on a dispositive matter under 28 U.S.C. § 636(b)(1)(B), which requires the Court "make a de novo determination" of "those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *United States v. Raddatz*, 447 U.S. 667, 673-74 (1980).

### B. Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(a). "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)).

When the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must provide "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)). Then, a court "views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), but disregards "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## VII. DISCUSSION

FELA allows railroad workers to seek compensation for injuries caused "in whole or in part" by the railroad's negligence. 45 U.S.C. § 51. FELA is firmly rooted in the common law of negligence. *See Conrail v. Gottshall*, 512 U.S. 532, 543 (1994) ("[W]hile what constitutes negligence for [FELA's] purpose is a federal question, we have made it clear that this federal question generally turns on principles of common law") (internal citation omitted).

Under FELA, a railroad is not required to "eliminat[e] all dangers;" rather, it must only eliminate "'those dangers which could be removed by reasonable care on the part of the employer' . . . in light of the normal requirements of the job." *Conway*, 720 F.2d at 223 (quoting *Padgett v. S. R. Co.*, 396 F.2d 303, 306 (6th Cir. 1968)). Significantly, FELA thereby does not require a railroad "to furnish [its] employee with the latest, best or most perfect appliance with which to work, nor to discard standard appliances already in use that are reasonably safe and suitable, even though later improvements have been discovered." *Soto*, 514 F. Supp. at 4.

This is a longstanding and well-recognized standard that courts apply to FELA claims. *See, e.g., Ezell v. BNSF Ry. Co.*, 949 F.3d 1274, 1282 (10th Cir. 2020) ("[T]o show railroad negligence, FELA requires plaintiffs to show an unsafe workplace—not a failure to provide the safest possible workplace"); *Wright v. BNSF Ry. Co.*, 177 F. Supp. 3d 1310, 1316 (N.D. Okla. 2016) ("[P]laintiff makes no

allegation that using the five-foot bar was unsafe, but only argues that there were easier, better methods of completing the task. This alone cannot establish negligence under FELA"); *McFarland v. Burlington N. Santa Fe Ry. Co.*, No. 32066-9-III, 2015 Wash. App. LEXIS 1465, at *9 (Ct. App. July 9, 2015) ("The existence of a more suitable or safer tool is irrelevant if it is not shown that the tool used is unsafe"); *Hane v. Nat'l R.R. Passenger Corp.*, 110 F.3d 573, 575 (8th Cir. 1997) (holding the trial judge's instruction to the jury that the railroad was not "required to furnish the latest, best and safest tools" to its employees "is an accurate statement of a principle of law that has been in force for the last century"); *Seymour v. Ill. Cent. R. Co.*, 25 F. Supp. 2d 734, 738 (S.D. Miss. 1997), *aff'd,* 154 F.3d 418 (5th Cir. 1998) ("[T]he employer is not required to furnish the employee the latest, best, or most perfect appliances with which to work . . . provided those in use are reasonably safe and suitable"); *McKennon v. CSX Transp., Inc.*, 897 F. Supp. 1024, 1027 (M.D. Tenn. 1995), *aff'd*, 56 F.3d 64 (6th Cir.1995) ("Under FELA, the proper inquiry is whether the method [of work] prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative method for performing the task") (internal quotation marks omitted).

As the Magistrate Judge concluded and this Court concurs, Mr. Brown has provided "no evidence that would allow a factfinder to conclude that a claw bar is an inherently dangerous tool or that it is not a reasonably safe tool for employees to use in the removal of fasteners," and, in fact, "[t]he record establishes that a claw bar is at times an appropriate tool to use in the removal of fasteners."

*Recommended Decision* at 8. Courts have consistently held the claw bar to be a reasonably safe tool for the removal of screw spikes. *See Pfaffle v. BNSF Ry. Co.*, No. 2:17-CV-0407-TOR, 2020 U.S. Dist. LEXIS 24677, at *5 (E.D. Wash. Feb. 12, 2020) ("other courts that have addressed the issue have found the use of a claw bar for removing spikes does not present an unreasonable risk of harm"); *Miller*, 2017 U.S. Dist. LEXIS 70652, at *10 (discussing expert testimony that claw bars "could be used reasonably safely to remove spikes, that 'every Class I railroad permits the use of claw bars to remove spikes,' [and] that it 'is a reasonably safe tool to use to remove spikes'"); *Maxwell v. CSX Transp.*, No. 1:14-CV-0412-WBH, 2015 U.S. Dist. LEXIS 188439, at *4 (N.D. Ga. 2015) (holding that plaintiff failed to establish the railroad was negligent in requiring him to use a claw bar because "[p]laintiff has presented no evidence that a claw bar, which the crew was forced to use in the absence of the hydraulic device, is an unsafe device when in good condition and used properly").

NBM Rail cites *Miller* to support its assertion that a railroad cannot be found negligent when it provides its workers with only a claw bar, even when a hydraulic puller may be available but out of reach to the worker. 2017 U.S. Dist. LEXIS 70652. The Court finds *Miller* instructive. In *Miller*, a truck driver employed by a railroad suffered an injury when the railroad instructed him to use a claw bar to remove railroad spikes. *Id.* at *2. The truck driver claimed that there was a hydraulic machine available on his truck, but that the railroad required him to stage his truck in a location where the hydraulic machine could not reach the

16

spikes. *Id.* at *9. After he suffered an injury removing railroad spikes with a claw bar, the truck driver claimed that the railroad breached its duty under FELA to provide him with a reasonably safe tool. *Id.* at *11-12.

The *Miller* Court rejected this theory and concluded there was no genuine dispute that a claw bar is a reasonably safe tool and that the railroad had no duty to provide or even to allow the defendant to use a hydraulic machine. *Id.* at *11 ("Since, as a matter of law, Defendant *did* provide a reasonably safe tool, namely, the claw bar, then also as a matter of law, Defendant had no further duty to provide a safer or more perfect tool") (emphasis in *Miller*). The *Miller* Court reasoned:

> Since Defendant had no legal duty to provide a tool other than the claw bar, Plaintiff's negligence claim fails as a matter of law to the extent it turns on any claim that Defendant should have ensured he could instead use the hydraulic spike puller. Defendant cannot be held liable for any conduct that Plaintiff claims contributed to his injury only as a consequence of Defendant's allegedly preventing the use of the hydraulic spike puller.

*Id.* at *13. The *Miller* Court concluded that the railroad could not be held liable for "any general claim that Defendant breached its duty to provide reasonably safe tools by not providing for use of the hydraulic spike puller" or "any other alleged conduct which Plaintiff claims caused his injury only as a consequence of being unable to use the hydraulic spike puller." *Id.* at *14.

Likewise, here the Court concludes that because the claw bar is a reasonably safe tool for removing screw spikes and a railroad is only required by law to provide its workers with a reasonably safe tool, there is no genuine issue of material fact as to whether NBM Rail acted negligently in failing to provide Mr. Brown with a

hydraulic machine. Despite its regular practice of supplying its workers with a hydraulic machine and regardless of why NBM Rail did not provide Mr. Brown with a hydraulic machine in this instance, a reasonable jury could not find that NBM Rail acted negligently because it in fact provided Mr. Brown with a reasonably safe tool with which to perform his job.

## VIII. CONCLUSION

The Court AFFIRMS in part and REJECTS in part the Magistrate Judge's recommended decision (ECF No. 49). The Court affirms the decision as it relates to the Plaintiff's first two legal theories—the unsafe tool and the failure to train theories—and rejects the decision as it relates to the third legal theory—the better tool theory. The Court thereby GRANTS Defendant NBM Rail's Motion for Summary Judgment (ECF No. 38) in its entirety.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 12th day of December, 2022